UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SUSANA H.-R.,[1] | Case No. 2:19-cv-09338-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Susana H.-R. ("Plaintiff") filed a Complaint on October 30, 2019, seeking review of the Commissioner's denial of her application for supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on June 29, 2020. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# BACKGROUND

Plaintiff filed her application for SSI on December 17, 2015, alleging disability starting on August 23, 2013. AR 30, 221-29. On June 7, 2018, after her application was denied initially and on reconsideration (AR 105, 124), Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), and a vocational expert ("VE") testified telephonically. AR 48-88.

On September 28, 2018, the ALJ concluded Plaintiff was not disabled. AR 30-40. The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 17, 2015, the application date. AR 32. The ALJ found Plaintiff had severe impairments of: lumbar spine disorder, sciatica; alcohol-induced depressive disorder; and generalized anxiety disorder. AR 32. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 33-34), and she had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 416.967(b)[2]:

> [E]xcept no more than occasional climbing, balancing, stooping,
> kneeling, crouching[,] and crawling[;] no greater than simple,
> routine tasks[;] no use of foot controls with the right[-]lower

---

[2] "Light work" is defined as

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

extremity, with a sit/stand option allowing the ability to change positions 2 times per hour, and lifting no greater than 10 pounds. AR 34-38.

The ALJ found Plaintiff was unable to perform her past relevant work as a stores laborer (Dictionary of Occupational Titles ["DOT"] 922.687-058). AR 39. The ALJ found that Plaintiff, at age 42 when her application was filed, was defined as a "younger individual." AR 39. The ALJ also found that Plaintiff had marginal education and "is able to communicate in English." AR 39.

The ALJ next considered that, if Plaintiff had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by the Medical-Vocational rules. AR 39. However, because Plaintiff's ability to perform all or substantially all the requirements of light work was impeded by additional limitations, the ALJ consulted the testimony of the VE. AR 39. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including the unskilled jobs of: assembler of small products (DOT 706.684-022), photocopy machine operator (DOT 207.685-014), and mail clerk/sorter (DOT 209.687-026). AR 39-40. Thus, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act, since the application's filing date. AR 40. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-7.

## II.

## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on

the record as a whole. <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. <u>Id.</u> To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Id.</u> at 720-21; <u>see also</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (<u>Molina</u>, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." <u>Brown-Hunter</u>, 806 F.3d at 492 (citation omitted).

**B.** <u>**Standard for Determining Disability Benefits**</u>

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. <u>See</u> <u>Ford v. Saul</u>, 950 F.3d 1141, 1148-49 (9th Cir. 2020); <u>Molina</u>, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." <u>Id.</u> If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe"

medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show she is disabled or she meets the requirements to proceed to the next step, and bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant

can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.

### DISCUSSION

The parties present two disputed issues (Jt. Stip. at 4):

Issue No. 1: Whether the ALJ properly provided a light-work restriction in the RFC instead of a sedentary restriction, and whether that would preclude the representative occupations identified by the VE; and

Issue No. 2: Whether the ALJ erred by finding Plaintiff can communicate in English, and whether such a finding would further diminish the representative occupations identified by the VE.

### A. **RFC & VE Testimony**

In Issue No. 1, Plaintiff argues the ALJ found Plaintiff could perform a range of light work, but due to the 10-pound lifting limitation, sit/stand option, and simple-repetitive-task limitation "a more reasonable way of assessing [the RFC] would be to equate these restrictions . . . to a sedentary[-]work restriction rather than a modified light[-]work restriction." Jt. Stip. at 4-6.

### 1. **Applicable Law**

A district court must uphold an RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. Id. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

The Commissioner bears the burden of "show[ing] that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's [RFC], age, education, and work experience." Tackett, 180 F.3d at 1100 (citation omitted). There is no bright-line rule for what constitutes a significant number of jobs. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). The Commissioner's burden can be met: "(a) by the testimony of a VE, or (b) by reference to the Medical-Vocational Guidelines ['the Grids'] . . .." Tackett, 180 F.3d at 1101.

An ALJ may take administrative notice of any reliable job information, including information provided by a VE. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). "A VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required." Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1218). "Given its inherent reliability, a qualified [VE]'s testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." Ford, 950 F.3d at 1160; see also Buck, 869 F.3d at 1051.

## 2. **Analysis**

Here, the ALJ found Plaintiff had an RFC of light work, "except" for limitations below the regulatory definition of that level of work. AR 34. Later in the decision, when the ALJ considered whether the Medical-Vocational rules directed a finding of "disabled," she again acknowledged that Plaintiff's "ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations." AR 39. Thus, the ALJ fashioned an RFC that fell between the definitions of light work and sedentary work.[3]

---

[3] "Sedentary work" is: "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

Because an "RFC is not the <u>least</u> an individual can do despite . . . her limitations or restrictions, but the <u>most</u>," the ALJ did not err in designating Plaintiff's RFC as a reduced range of light work, as opposed to a heightened range of sedentary work. <u>See</u> <u>Michele M. v. Saul</u>, 2020 WL 1450442, at *6 (S.D. Cal. Mar. 25, 2020) (quoting SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996)); 20 C.F.R. § 416.945(a). Ultimately, however, it matters not how Plaintiff's range of work was styled. For the purposes of this Court's review, the issue is whether the RFC and non-disability determination are supported by substantial evidence. <u>Bayliss</u>, 427 F.3d at 1217.

The ALJ's RFC and non-disability determinations are supported by substantial evidence. The ALJ asked the VE questions based on hypothetical individuals with Plaintiff's vocational factors, age, education, and limitations. AR 72-77. The VE testified that 38,000 small-products assembler positions, 28,000 photocopy machine operator positions, and 55,000 mail clerk positions would be available. AR 76. Counsel further restricted the hypotheticals down to matching Plaintiff's RFC, including the 10-pound lifting restriction that Plaintiff argues here is representative of "more sedentary work," and the VE testified the same representative occupations would be available, but reduced by 75% total.[4] AR 74-79. Relying on this testimony, the ALJ found there were

---

walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." <u>See</u> 20 C.F.R. § 416.967(a); <u>see also</u> <u>Marvin C. v. Berryhill</u>, 2019 WL 1615239, at *3 (W.D. Wash. Apr. 16, 2019).

[4] The transcript states the VE stated there were 6<u>5</u>,000 mail clerk positions in response to counsel's hypotheticals, whereas she said there were 5<u>5</u>,000 in response to the ALJ's hypotheticals. AR 76, 79. It is unclear whether this is a reporting error or a discrepancy in the VE's testimony. Regardless, the ALJ used the smaller number of 55,000, more favorable to Plaintiff, in reaching the Step-Five determination. AR 40.

jobs in significant numbers that Plaintiff could perform: 9,500 small products assembler jobs (75% reduction of 38,000); 7,000 photocopy machine operator jobs (75% reduction of 28,000); and 13,750 mail clerk/sorter jobs (75% reduction of 55,000), for a total of 30,250 jobs. AR 40. That testimony is substantial evidence supporting the ALJ's determination that Plaintiff's RFC did not preclude her ability to work, and it meets the Commissioner's burden. See Lewis v. Berryhill, 708 F. App'x 919, 920 (9th Cir. 2018) (10,000 office helper jobs in California a "significant" number of jobs claimant could perform); Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 527-29 (9th Cir. 2014) (finding 25,000 jobs nationally is a significant number); Ford, 950 F.3d at 1159-60 (VE testimony is inherently reliable and ordinarily sufficient "by itself" to support Step Five, and need only clear the "low substantial evidence bar"); Osenbrock v. Apfel, 240 F.3d 1157, 1162-63 (9th Cir. 2001).

At best, Plaintiff presents an alternate interpretation of the jobs available based on her qualification of the RFC, which is insufficient to undermine the VE's testimony. See Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (internal quotation marks and citation omitted)); Molina, 674 F.3d at 1111; see also, e.g., Aragon v. Colvin, 2016 WL 1257785, at *5 (C.D. Cal. Mar. 30, 2016) (collecting cases uniformly rejecting lay interpretation and analysis of job numbers). Reversal is not warranted on this ground.

## B. **Language Ability**

In Issue No. 2, Plaintiff contends that the decision "mistakenly" states that Plaintiff can communicate in English. Jt. Stip. at 6. She claims that, although she may understand a few words, "she clearly could not and cannot facilitate in the English language." Id. She alleges that of the three representative occupations identified by the VE, "Spanish[-]only options would

9

further erode the position of Photocopy Machine operator and Mail Sorter as English is primarily used in these fields." <u>Id.</u>

### 1. <u>Applicable Law</u>

Although a claimant's inability to communicate in English limits the jobs he or she can perform, it is not a physical or mental disability of the type social security disability benefits are intended to address. "A claimant is not per se disabled if he or she is illiterate." <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001). Nonetheless, an ALJ must not ignore language problems since they are critical to an individual's ability to function in the workplace. <u>Id.</u> at 846. However, "[w]hile illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(I).

### 2. <u>Analysis</u>

The Commissioner argues Plaintiff "waived any argument as to literacy because she failed to raise this issue before the agency despite being represented by counsel throughout the administrative proceedings." Jt. Stip. 7. In reply, counsel argues that Plaintiff "could not have raised the issue of her inability to speak English any sooner than she had as she was unaware this would be at issue until receiving the . . . Unfavorable Decision." Jt. Stip. at 10. Neither position accurately captures the underlying proceedings or waiver issue.

Counsel, the same attorney who represented Plaintiff during the application process, administrative proceedings, and here, raised this issue in Plaintiff's pre-hearing/pre-decision letter brief before the ALJ (AR 323-24), and then in his brief before the Appeals Council (AR 5, 217-18), albeit in cursory fashion. However, at the optimal time during the hearing, when the VE could

have been asked about the effect Plaintiff's alleged language deficiency would have had on the statistical number of jobs she could perform and that answer could have been assessed by the ALJ, counsel posed no restrictions based on Plaintiff's language ability. AR77-79; See Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) ("[t]he ALJ, rather than this Court, [is] in the optimal position to resolve the conflict between [a claimant's] new evidence and the statistical evidence provided by the VE"). Accordingly, to the extent Plaintiff claims the ALJ erred solely as to the hypothetical questions posed to the VE, such a challenge is waived here. See Howard v. Astrue, 330 F. App'x 128, 130 (9th Cir. 2009) (claimant waived argument that ALJ's hypotheticals were inadequate where claimant's attorney had opportunity to pose hypotheticals but never mentioned allegedly erroneously omitted limitation); Meanel, 172 F.3d at 1115 (claimant's argument – that there were insufficient jobs in local area for a particular position – not properly preserved for appeal).

Further, even in the briefing here—outside of the blanket statement that two of the jobs would be further eroded by "Spanish[-]only options" (Jt. Stip. at 6) and that although she previously worked it was "in this community as Santa Barbara has a large Latino community and the individuals she worked with and worked for predominately spoke Spanish" (Jt. Stip. at 10)—Plaintiff makes no showing by how much the representative occupations would be eliminated or eroded. Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not properly raised before the district court); Allison v. Astrue, 425 F. App'x 636, 640 (9th Cir. 2011) (any error in finding claimant could perform a job harmless if claimant could perform other jobs); Meanel, 172 F.3d at 1114-15 (court need not address a claimant's arguments regarding both jobs identified by the ALJ where the ALJ properly relied on one of the jobs). Nonetheless, despite Plaintiff's failure to properly raise the issue, the Court concludes that the ALJ's finding is supported by the record.

11

In the decision, the ALJ discussed Plaintiff's testimony, including her statements that she has trouble understanding English and following instructions. AR 35. The ALJ noted Plaintiff admitted she filled out documents in English, such as the work history report. AR 35. Further, the ALJ discussed how Plaintiff responded appropriately and participated in the psychiatric consultative examination, and hospital records showed she was able to communicate in English. AR 35 (citing AR 853), 38 (citing 801-04).

These findings are supported by the record. Although Plaintiff prepared her function report in Spanish (AR 282-97) and she appears to have been assisted by a Spanish interpreter at the hearing (AR 48, 73; but see AR 53 [when asked about her prior work, she explained "I don't know how to say it in Spanish"]), substantial supports the ALJ's finding that Plaintiff could communicate in English (AR 39). For example, her pain questionnaire and work-history report were prepared in English and she signed the latter as the person who completed the form and so confirmed. AR 49-51, 252-54, 257-68. Further, the consultative examiner's report stated "[t]here was no interpreter required for this examination." AR 801. Later, the report stated that Plaintiff was "responsive" and that "[Plaintiff]'s speech seemed adequate in English." AR 802-03. Hospital records also described Plaintiff as a "mostly English-speaking Hispanic woman." AR 35, 853.

Plaintiff's underlying application materials add further support to the ALJ's finding. For example, at least one of the disability reports prepared by Plaintiff answered "Yes" to questions such as "Can you speak and understand English"; "Can you read and understand English?"; and "Can you write more than your name in English?" AR 240-41. Moreover, during a "[f]ace-to-face" interview with Plaintiff at a field office, the Agency noted that Plaintiff had no difficulty reading, understanding, talking, answering, or writing, and specifically mentioned Plaintiff was a "[p]olite lady, answered all questions,

walks fine. No difficulties were noted." AR 250. Finally, in a disability report prepared by counsel on Plaintiff's behalf, he indicated Plaintiff could "speak and understand English." AR 273-74.

Thus, viewing the record as a whole, the ALJ's determination is supported by substantial evidence. See, e.g., Mohammad v. Colvin, 595 F. App'x 696, 697 (9th Cir. 2014) (ALJ's determination regarding language ability supported by substantial evidence because "[claimant] had been observed speaking English, and various individuals reported that they had been able to communicate with her in English, albeit with some difficulty"); Reddick, 157 F.3d at 720-21. Even if some of the evidence may be susceptible to more than one interpretation, the Court must uphold the ALJ's finding. See Molina, 674 F.3d at 1111; Ryan, 528 F.3d at 1198. Reversal is not warranted.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: July 10, 2020

JOHN D. EARLY
United States Magistrate Judge

13